Curtis TYLER, Appellant,

v.

Cranston J. MITCHELL, et al., Respondents.

No. WD 46179.

Missouri Court of Appeals, Western District.

April 20, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 1, 1993.

Curtis Tyler, pro se.

William L. Webster, Atty. Gen., Geoffrey W. Preckshot, Asst. Atty. Gen., Jefferson City, for respondents.

Before KENNEDY, P.J., and BERREY and SPINDEN, JJ.

PER CURIAM:

Curtis Tyler appeals the trial court's dismissal of his declaratory judgment action against the members of the Missouri Board of Probation and Parole. Tyler, a prison inmate serving a life sentence for first degree murder, sued the board members on August 1, 1991, on the ground that their handling of his case violated his constitutional rights. We affirm the trial court's dismissal of his petition.

Because we are reviewing the trial court's granting of a motion to dismiss, "[w]e treat the facts averred [in the petition] as true and construe all averments liberally and favorably to appellant." *Kanagawa v. State By and Through Freeman*, 685 S.W.2d 831, 834 (Mo. banc 1985).

In his petition, Tyler attached several board forms reporting the reasons for the board's denial of parole. In a form dated April 8, 1983, the board's stated reason was:

> Because of the seriousness of the offense for which you were convicted, in that during a robbery the victim was shot and killed, the Board believes that release at this time would depreciate the seriousness of the offense committed. Therefore, it is the Board's decision to schedule you for a reconsideration hearing in March, 1985.

The board again denied parole in March 1985. Its stated reason was:

> Because you were convicted of an offense in which you entered the home of the victim with the intentions of commit-

ting a robbery which resulted in the death of the male victim[,] the board believes that release at this time would depreciate the seriousness of the offense committed or promote disrespect for the law. Therefore the Board in its discretion has established a review date of March, 1987.

On April 1, 1987, the board again denied a release of parole to Tyler and stated this reason:

Because you have received approximately 14 conduct violations since your last parole hearing in March, 1985[,] the Board believes that you have not substantially observed the rules of the institution in which you have been confined. Therefore the Board in its discretion has determined to go outside the guidelines and schedule you for parole release on 3–17–91.

That report was followed by one dated November 2, 1990, which stated:

In a report dated 9–27–90, the Board was informed that since your March, 1987 parole hearing you have received several conduct violations including some for possession of intoxicating substances and one for threats. As a result of your behavior, the Board believes that you have not substantially observed the rules of the institution in which you have been confined. Therefore the Board in its discretion has determined to cancel your March 17, 1991 release and to reschedule you for another personal hearing in December, 1990.

The next report in the record concerning the board's action on Tyler's release is dated June 25, 1991, and it stated:

Because you have received numerous conduct violations since your 1987 parole hearing, the Board believes that you have not substantially observed the rules of the institution in which you have been confined. The Board has also reconsidered the serious nature of the offense upon which you were originally incarcerated. Therefore the Board in its discre-

tion has determined to go outside the guidelines and schedule you for another personal hearing in March, 1993.

The primary complaint in Tyler's complaint was that he had been denied due process of law because these explanations were "insufficiant [sic] to permit meaningful review on the question whether the board acted fairly, lawfully, and non-arbitrarily, not-with-standing its broad discretion" and "by arbitrarily discriminating between similarly situated prisoners in the matter of parole consideration[.]" He also complained that the board was using different guidelines than those in effect when the state filed its criminal information against him in March 1975 and this constituted an improper *ex post facto* application of new guidelines to his case.

The board moved to dismiss the complaint for failing to state a cause of action upon which the court could grant relief. The trial court granted the motion. We affirm.

These issues are similar to those before this court in *Cooper v. Missouri Board of Probation and Parole*, WD 45593, slip op., 1993 WL 112075 (March 2, 1993).[1] We reach the same conclusions in this case.

As noted in *Cooper*, the due process liberty interest accorded to Tyler by the constitutions of the United States and Missouri is retracted by virtue of his incarceration. As the U.S. Supreme Court stated, "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston*, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948). *See also Howard v. Armontrout*, 729 S.W.2d 547 (Mo.App.1987).

Tyler's complaint averred that the board's explanations for denying his parole were not specific enough to afford him due process, that the board acted under guidelines promulgated pursuant to a new statute in violation of the *ex post facto* clause

---

**1.** A motion for rehearing or transfer to the Supreme Court was filed in this case on March 15, 1993.

of the U.S. Constitution, and that the board "arbitrarily discriminat[ed] between similarly situated prisoners ... as [Tyler] has two ... other persons that were convicted of the same charge, and each have been granted parole." The trial court properly dismissed these claims.

 As for the board's proffered explanations, the reasons offered by the board in the *Cooper* case also were based on the seriousness of the inmates' offenses. This court held, "[N]ot only is it a legitimate and established ground ... that the Board may determine that the serious nature of the offense requires that a longer term be completed before parole, but this ground [is available] under either the old or new parole release statutes." *Id.* at 12 (citing *Maggard v. Wyrick*, 800 F.2d 195, 197 (8th Cir.1986)). The complaint is without merit.

 Nor do we discern merit in Tyler's *ex post facto* claim.[2] The *ex post facto* prohibition concerns laws. That prohibition is directed to the legislature rather than to other branches of government. *Prater v. United States Parole Commission*, 802 F.2d 948, 951 (7th Cir.1986). A law enacted by a legislature is a law for *ex post facto* purposes. *Miller v. Florida*, 482 U.S. 423, 435, 107 S.Ct. 2446, 2453–54, 96 L.Ed.2d 351 (1987). Yet guidelines issued by a parole authority are not laws under the *ex post facto* clauses when they operate as flexible guideposts for the exercise of the discretion granted by the legislature. *Portley v. Grossman*, 444 U.S. 1311, 1312, 100 S.Ct. 714, 715, 62 L.Ed.2d 723 (1980) (Rehnquist, J., as circuit justice); *Ruip v. United States*, 555 F.2d 1331, 1335 (6th Cir.1977). When parole guidelines are not laws, no *ex post facto* violation results from applying guidelines more severe than those in force when the crime was committed. *Prater*, 802 F.2d at 951.

 Finally, we conclude that the trial court properly dismissed Tyler's claim that he was discriminated against. He fails to raise a proper claim under either the equal protection or due process clauses. It is not enough under the equal protection clause for a claimant to assert that he has been deprived of a benefit granted to others. It is hornbook law that:

> The equal protection clause guarantees that similar individuals will be dealt with in a similar manner by the government. It does not reject the government's ability to classify persons or "draw lines" in the creation and application of laws, but it does guarantee that those classifications will not be based upon impermissible criteria or arbitrarily used to burden a group of individuals.
>
> . . . .
>
> It should be noted that the equal protection guarantee has nothing to do with the determination of whether a specific individual is properly placed within a classification. Equal protection tests whether the classification is properly drawn. It is the guarantee of procedural due process that determines what process is necessary to find that an individual falls within or outside of a specific classification. Equal protection deals with legislative line drawing and procedural due process with the adjudication of individual claims.

J. Nowak, R. Rotunda, and J. Young, *Handbook on Constitutional Law*, 519 (1978). The nature of Tyler's complaint then relegates the court's consideration to procedural due process.

The trial court properly dismissed Tyler's petition. The only facts pleaded in the petition was that two other, unnamed persons "convicted of the same charge" had been granted parole. These facts did not articulate a procedural due process claim. That individuals charged with the same crime receive parole does not, alone, establish a denial of due process, especially given the discretion accorded to the board.

*Parole*, WD 46927, slip op. at 4–5 (April 6, 1993).

---

**2.** This analysis is identical to this court's reasoning in *Fults v. Missouri Board of Probation and*