Nancy L. ANSEVICS, Appellant,

v.

Roger L. CASHAW, Respondent.

No. WD 48573.

Missouri Court of Appeals,
Western District.

Aug. 16, 1994.

Theodore M. Kranitz, St. Joseph, for appellant,

Michael P. Harris, St. Joseph, for respondent.

Before HANNA, P.J., and BRECKENRIDGE and ELLIS, JJ.

BRECKENRIDGE, Judge.

Nancy Ansevics appeals from an order modifying a decree of dissolution with respect to child support and visitation rights. The judgment is affirmed in part, reversed in part, and remanded.

Nancy Ansevics and Roger Cashaw were married on December 10, 1982 and separated on June 30, 1988. During the marriage, the parties adopted Michael Aaron Ansevics–Cashaw (Aaron), who was born on October 26, 1983. Mr. Cashaw is black and Christian. Dr. Ansevics is white and Jewish. Aaron is bi-racial and the parties agreed to raise him in the Jewish faith. Dr. Ansevics filed her petition for dissolution on March 20, 1989. On July 18, 1989, the trial court entered its decree dissolving the marriage. Dr. Ansevics was awarded custody of Aaron and Mr. Cashaw was allowed supervised visitation. Mr. Cashaw was ordered to pay child support in the amount of $154.00 per month.

On June 21, 1993, Mr. Cashaw filed a motion to modify the decree of dissolution seeking unsupervised visitation with Aaron. He also requested attorney fees. Dr. Ansevics filed an answer and countermotion seeking an increase in child support. In October 1993, the trial court entered a modification order increasing the amount of child support to $275.00 per month and granting unsupervised visitation privileges to Mr. Cashaw. The court ordered Dr. Ansevics to pay Mr. Cashaw's attorney fees in the sum of $2,000.00. The court also ordered Mr. Cashaw and Aaron to participate in counseling with Teresa Humphreys, a licensed psychologist.

Dr. Ansevics raises four points on appeal. In her first point, she contends that she was denied equal protection of the law and the judgment was against the weight of the evidence because the trial court's decree failed to provide for the observance of Jewish holidays and holy days in the visitation schedule. Dr. Ansevics claims the trial court should have entered a decree that provided a balanced accommodation of the religious practices, obligations and observances of both parties.

Our standard of review in these cases is well-established. The trial court's decree will not be set aside unless there is no substantial evidence to support it, it is against the weight of the evidence or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). "Appellate courts should exercise the power to set aside a decree or judgment on the ground it is 'against the weight of the evidence' with caution and with a firm belief that the decree or judgment is wrong." *Id.* The evidence is viewed in a light most favorable to the prevailing party and contradictory evidence is disregarded. *Rothfuss v. Whalen*, 812 S.W.2d 232, 238 (Mo.App.1991).

■ Dr. Ansevics fails to raise a proper equal protection claim. Like the appellant in *Tyler v. Mitchell*, 853 S.W.2d 338, 341 (Mo.App.1993), Dr. Ansevics is claiming that she was denied a benefit granted to others. As stated in *Tyler*:

The equal protection clause guarantees that similar individuals will be dealt with in a similar manner by the government. It does not reject the government's ability to classify persons or "draw lines" in the creation and application of laws, but it does guarantee that those classifications will not be based upon impermissible criteria or arbitrarily used to burden a group of individuals.

. . . .

It should be noted that the equal protection guarantee has nothing to do with the determination of whether a specific individual is properly placed within a classification. Equal protection tests whether the classification is properly drawn. It is the guarantee of procedural due process that determines what process is necessary to find that an individual falls within or outside a specific classification. Equal protection deals with legislative line drawing and procedural due process with the adjudication of individual claims.

*Id.* (quoting J. Nowak, R. Rotunda, and J. Young, *Handbook on Constitutional Law,* 519 (1978)). Dr. Ansevics' complaint that the modification order does not provide a balanced accommodation of the religions of both parties is not an equal protection issue.

Dr. Ansevics also asserts in her point relied on that the order of visitation is against the weight of the evidence. The record from the hearing on the motion to modify includes Mr. Cashaw's acknowledgement that he consented to Aaron being raised in the Jewish faith. Dr. Ansevics testified that she and Aaron observe the Jewish holidays of Rosh Hashanah, Yom Kippur, Hanukkah, Pesach (Passover) and Purim. She further testified that she did not consider Christian holidays to be meaningful. Mr. Cashaw indicated little knowledge of Jewish holidays, but testified that he was willing to accommodate Aaron being raised in the Jewish faith. Mr. Cashaw requested that he have visitation with Aaron on Christmas and other holidays in alternating years. The trial court's order awarded Mr. Cashaw visitation on Christmas, Christmas Eve and Easter in alternating years, but made no provision for Jewish holidays.

On this record, the order of visitation's failure to provide for Jewish holidays, while dividing the Christian holidays among the parties, is against the weight of the evidence and requires reversal. Since this case is being reversed and remanded on other grounds, the trial court is directed on remand to issue an order of visitation addressing both Jewish and Christian holidays. The weight of the evidence requires an order which permits Dr. Ansevics to have Aaron in her custody on Jewish holidays and awards Mr. Cashaw visitation on Christian holidays every year, not just alternating years. On remand, the trial court may also consider and resolve conflicts arising when Jewish and Christian holidays are celebrated on the same day.

Although this court reverses the trial court's schedule of visitation on religious holidays, the court affirms all other provisions of the trial court's order of visitation. Contrary to Dr. Ansevics' arguments on appeal, there is no plain error in the trial court's order allowing Mr. Cashaw to have visitation at times which conflict with Aaron's religious training. Dr. Ansevics testified that raising Aaron in the Jewish faith required him to attend temple on Tuesday, Thursday and Sunday, every week for the next six years. Considering that Mr. Cashaw lives in Kansas City and Dr. Ansevics now lives in Jefferson City, a request that Mr. Cashaw not be allowed visitation which would conflict with Aaron's religious training would virtually deny Mr. Cashaw meaningful weekend visitation.

Mr. Cashaw testified that he would be fully accommodating with regard to Aaron's upbringing in the Jewish faith. He also testified that he was willing to work with Dr. Ansevics to make the necessary arrangements so as not to interfere with Aaron's religious training. On this record, there is sufficient evidence to support the trial court's ruling that weekend visitation between Mr. Cashaw and Aaron is in Aaron's best interests, despite the fact that such visitation conflicts with Aaron's religious training.

For her second point, Dr. Ansevics contends the trial court erred in ordering her to

pay Mr. Cashaw's attorney fees. Dr. Ansevics argues that § 452.400, RSMo Cum.Supp. 1993,[1] rather than § 452.355, governs the award of attorney fees. Dr. Ansevics asserts that under § 452.400.4 an unreasonable denial or interference with visitation is required to support an attorney fee award. She also claims the trial court erred in basing its award of attorney fees upon a finding that Dr. Ansevics' denial of Mr. Cashaw's motion to modify was unreasonable and unfounded.

■ Trial courts have broad discretion in awarding attorney fees. *Mabon v. Mabon*, 833 S.W.2d 488, 489 (Mo.App.1992). An award of attorney fees will not be overturned on appeal absent a clear abuse of discretion. *Meservey v. Meservey*, 841 S.W.2d 240, 248 (Mo.App.1992). The challenging party must show that the trial court's award was "clearly against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice." *Id.*

■ Contrary to Dr. Ansevics' argument, § 452.355 governs the award of attorney fees in this case, as § 452.355 is the general authority for awards of attorney fees in domestic relations cases. Section 452.-400.4 is not applicable because it pertains to proceedings to enforce visitation rights. Pursuant to § 452.355.1, the court may consider all relevant factors, including the financial resources of both parties, when determining whether to grant a request for attorney fees. "One spouse's greater ability to pay is sufficient to support an award of attorney's fees to the other spouse." *Meservey*, 841 S.W.2d at 248. Another relevant factor when awarding attorney fees is the extent that the opposing party's conduct required the expense of attorney fees. *T.B.G. v. C.A.G.*, 772 S.W.2d 653, 655 (Mo. banc 1989). When considering the opposing party's conduct, "[t]he trial court is in a better position not only to judge the credibility of the witnesses but also the sincerity in their position, which might not be completely revealed by the record." *Id.*

■ In this case, the trial court made the following ruling with regard to attorney fees:

After considering all relevant factors, including the financial resources of the parties and the petitioner's unreasonable and unfounded position in denying respondent's Motion to Modify Visitation, the respondent is granted judgment against the petitioner in the amount of $2,000.00 as and for respondent's attorney's fees.

The record shows that at the time of the hearing, Dr. Ansevics was a licensed psychologist as well as the president and executive director of the Anstocks Clinic in St. Joseph. The record also shows that her income is considerably more than Mr. Cashaw's. It was not improper for the court to consider, *inter alia,* the relative financial resources of the parties. In addition, the trial court awarded attorney fees at the end of the trial upon Mr. Cashaw's motion for unsupervised visitation when the trial court found that unsupervised visitation is now in the best interests of Aaron. The trial court's finding indicates its belief, supported by the record, that Dr. Ansevics was not ingenuous in some of her positions when contesting the award of unsupervised visitation. The court did not abuse its discretion in awarding attorney fees to Mr. Cashaw.

Dr. Ansevics further asserts that there is no evidence of "very unusual circumstances" as required when awarding attorney fees in a modification proceeding. Dr. Ansevics relies upon *Campbell v. Campbell,* 825 S.W.2d 319, 323 (Mo.App.1992), for the principle that "[t]he award of attorney's fee requiring one party to a motion to modify to pay the other party's attorney's fee and litigation expenses is not justified absent showing of 'very unusual circumstances.'" *Campbell* is one of a number of cases declaring such a rule.[2] The

1. All statutory citations are to Revised Missouri Statutes Cumulative Supplement 1993, unless otherwise indicated.

2. *Kovacs v. Kovacs,* 869 S.W.2d 789, 794 (Mo. App.1994); *Summerville v. Summerville,* 869 S.W.2d 79, 84 (Mo.App.1993); *Hott v. Hott,* 865 S.W.2d 449, 450 (Mo.App.1993); *Mudd v. Mudd,* 859 S.W.2d 699, 703 (Mo.App.1993), *overruled on other grounds by King v. King,* 865 S.W.2d 403, 405 (Mo.App.1993); *Pasley v. Patton,* 855 S.W.2d 385, 389 (Mo.App.1993); *Gable v. Gable,* 816 S.W.2d 287, 292 (Mo.App.1991); *Amedei v. Amedei,* 801 S.W.2d 491, 494 (Mo.App.1990); *Echele v. Echele,* 782 S.W.2d 430, 441 (Mo.App. 1989); *Lyles v. Lyles,* 710 S.W.2d 440, 444 (Mo.

holding in *Campbell* is contrary to that of *Dimmitt v. Dimmitt*, 849 S.W.2d 218, 222 (Mo.App.1993), however, which rejects the "very unusual circumstances" standard because the statute authorizing the award of attorney fees in domestic relations cases, § 452.355.1, "contains no requirement of unusual circumstances."

An analysis of Missouri case law reveals that the "very unusual circumstances" standard originated in *In re Marriage of Hoglen*, 682 S.W.2d 179 (Mo.App.1984). *Hoglen* relied upon *Bryson v. Bryson*, 624 S.W.2d 92 (Mo.App.1981), as authority for requiring "very unusual circumstances" to justify awards of attorney fees in modification actions. *Hoglen*, 682 S.W.2d at 182. Such reliance was misplaced. *Bryson* is a declaratory judgment action in which a former wife sought declaration of the rights and duties of the parties under their separation agreement. *Bryson*, 624 S.W.2d at 93. The former wife also requested her attorney fees in the declaratory judgment action. *Id.* at 94. As part of its analysis, the *Bryson* court stated that:

> Attorney fees are recoverable only when called for by contract or provided by statute, or as an item of damage when the incurrence of the fees involves the wronged party in collateral litigation, or occasionally, when the court of equity finds it necessary to adjudge them in order to balance benefits. Appellant does not base her claim for attorney fees upon contract or statute but, necessarily, upon the equities. The equitable balancing of benefits by awarding attorney fees, however, occurs only if very unusual circumstances can be shown, and upon demonstration that the action is so different from other actions of like kind that it should be considered an unusual circumstance.

*Id.* at 98–99 (citations omitted).

 There is a statutory basis for the award of attorney fees in a Chapter 452 domestic relations case and, therefore, the "very unusual circumstances" standard is inapplicable. *See Dimmitt*, 849 S.W.2d at 222. *Hoglen*, and the other cases cited herein adopting the "very unusual circumstances"

standard espoused in *Hoglen*, should not be followed. Point two is denied.

For her third point, Dr. Ansevics contends the trial court erred in awarding child support in the amount of $275.00 because that figure was based on an incorrect Form 14 calculation and the court made no finding that her Form 14 calculation for child support was "unjust and inappropriate."

 Although use of the child support guidelines is mandatory, the trial court is afforded considerable discretion with respect to the granting of child support. *In re Marriage of Amos*, 843 S.W.2d 946, 954 (Mo.App. 1992). "If the court awards child support in accordance with [Rule 88.01] and Civil Procedure Form 14, [it] is not required to justify [its] use of the same by record findings." *Id.* (quoting *Cash v. Cash*, 812 S.W.2d 265, 266 (Mo.App.1991)).

Rule 88.01 sets forth the following relevant factors to be considered by the trial court:

(a) The financial resources and needs of the child;

(b) the financial resources and needs of the parents;

(c) the standard of living the child would have enjoyed if the marriage had not been dissolved;

(d) the physical and emotional needs of the child; and

(e) the educational needs of the child.

*Rothfuss*, 812 S.W.2d at 237.

In this case, the record indicates that each party submitted income and expense statements and a Form 14. On the Form 14 submitted by Mr. Cashaw, the average monthly child care costs were reported as $64.00 per month. The presumed monthly child support amount on Mr. Cashaw's Form 14 is $275.00. Dr. Ansevics submitted two Form 14 calculations. On her amended Form 14, she reported monthly day care costs of $303.00. However, this figure conflicted with the amount she reported on her income and expense statement, which shows

App.1986); *In re Marriage of Hoglen*, 682 S.W.2d 179, 182 (Mo.App.1984).

monthly day care costs of $64.00.[3] According to the calculations on Dr. Ansevics' Form 14, the presumed monthly child support amount is $378.00.

■ Under the original decree of dissolution, Mr. Cashaw was ordered to pay $154.00 per month in child support. The modification order increases that amount to $275.00 per month, as shown by the computations on Mr. Cashaw's Form 14. In its order, the court made the following determination:

The presumed child support amount pursuant to Section 452.340.8 R.S.Mo., Supreme Court Rule 88.01 and Form 14 is $275.00 per month and has not been rebutted as being unfair and inappropriate.

Dr. Ansevics claims that since the court did not adopt her Form 14 computation for the amount of presumed child support, it was required to make a finding that her calculation was "unjust or inappropriate." Since both Dr. Ansevics and Mr. Cashaw submitted income and expense statements, the court had adequate evidence from which to determine the relative financial needs and resources of the parties. Although Dr. Ansevics' Form 14 computation for day care costs was in conflict with the amount reported on her income and expense statement, the trial court was free to accept or reject such evidence. *Id.* at 238. The trial court is in a superior position with regard to determining the credibility, sincerity and character of witnesses. *Id.* Here, the trial court had to resolve conflicting evidence with regard to the amount of day care costs and, as such, we defer to its determination. Point three is denied.

In her final point, Dr. Ansevics claims there was no evidence to support the modification order to the extent that it required Mr. Cashaw and Aaron to participate in counseling. In its modification order, the trial court ordered Mr. Cashaw and Aaron to participate in counseling with Teresa Humphreys, a licensed psychologist. The court further ordered each party to pay one-half of the counseling expenses and noted that the

counselor would be required to file monthly progress reports with the court.

■ In ruling on a motion to modify visitation rights, the paramount concern of the court is whether the modification order will serve the best interests of the child. Section 452.400.2. *See also James v. James,* 853 S.W.2d 425, 427 (Mo.App.1993). "The court has a very wide latitude in formulating [an order pertaining to child custody] which offers the best prospects for serving the welfare of the child." *N.K.M. v. L.E.M.,* 606 S.W.2d 179, 183 (Mo.App.1980).

■ The record indicates that Aaron had been experiencing some emotional problems that stemmed, at least in part, from his efforts at coming to terms with his relationship with Mr. Cashaw as well as his bi-racial heritage. Although Dr. Ansevics now challenges the portion of the decree requiring Mr. Cashaw and Aaron to obtain counseling, the record reflects that at the time of the hearing she believed such counseling would be beneficial. At the hearing, she indicated that she would be in favor of counseling for Aaron and Mr. Cashaw and believed counseling would serve to build a healthy relationship between Mr. Cashaw and Aaron. She also testified that she had no problem using an independent therapist as long as he or she was qualified in child psychology.

The following excerpt from the transcript of the motion to modify hearing clearly reveals the court's concern for the child's emotional well-being:

I've talked to that young man and I think his problems are a little deeper. There's a clear indication that he has some problem with his father being black. There's a clear indication that he has a perception that he wants to put this all behind him and he would like for his father in some respects to go away, but then you continue to talk to him and then he's upset by the fact that his father doesn't want to be with him. You see a child who on one hand says the worst thing is that he's my father and I wish this would go away, and on the

---

**3.** At the hearing, the mother indicated that the $64.00 figure reported on her income and expense statement pertained to the average amount of monthly day care costs during the summer months only.

other hand you see drawings where he's very upset because his father didn't come.... But this young man apparently wants to have a relationship with his father, that's very clear. But on the other hand, it's like somebody's told or convinced him that it would be better if he's dead, just go away....

\* \* \* \* \* \*

Now the problem presents itself in this particular case is that I do have to deal with the child as I have him and certainly I believe everybody when they say this child has some emotional problems....

The fact is that I'm going to deal with the child and I certainly don't want to put this child in a situation where he can't cope, that's not fair to him, he didn't create this problem....

As the transcript reveals, the court found that Aaron was experiencing some emotional problems and that he had conflicting feelings about his relationship with Mr. Cashaw. Testimony presented by Mr. Cashaw indicated a strong desire for a closer relationship with Aaron. The record also reflects that Dr. Ansevics believed counseling would be beneficial. Under the facts and circumstances of this case, it was reasonable for the court to determine that counseling would be necessary in order for Aaron and Mr. Cashaw to establish a healthy relationship. Accordingly, we find there was sufficient evidence to support the trial court's determination that the child's best interests would be served by requiring Mr. Cashaw and Aaron to participate in counseling.

Dr. Ansevics also challenges the designation by the trial court of Teresa Humphreys as the therapist to conduct the counseling. Dr. Ansevics asserts that there is no evidentiary basis for the trial court's order which establishes the qualifications of Ms. Humphreys. The order of modification merely contains the provision that "[Mr. Cashaw] and the minor son, Aaron, are ordered to participate in counseling with Teresa Humphreys, a licensed psychologist...."

A review of the transcript reveals no mention of Teresa Humphreys, nor does the record disclose any proceeding where the designation of a counselor was addressed. This court cannot conduct a meaningful review of the trial court's order without an adequate record. *See Belleville v. Director of Revenue,* 825 S.W.2d 623, 625 (Mo. banc 1992).

Considering the personal nature of counseling, it is desirable for the parties to be given an opportunity to present evidence or argument to the court for consideration in the selection of the therapist. This is not to say that parties must approve the professional chosen by the court, but only that the parties should be permitted to express their opinions and desires to the court prior to its final selection. The portion of the order of modification appointing Teresa Humphreys as the professional authorized to conduct counseling with Mr. Cashaw and Aaron is reversed and the cause is remanded for proceedings to designate a counselor.[4]

The judgment is affirmed, except for the visitation order pertaining to religious holidays and the appointment of Teresa Humphreys as counselor for Mr. Cashaw and Aaron, which provisions are reversed and remanded for further proceedings consistent with this opinion.

All concur.

---

4. The reversal of the appointment of Teresa Humphreys as counselor does not disqualify her

from consideration by the trial court on remand.