**Cathy C. RUNYAN, Appellant,**

v.

**Gregory N. RUNYAN, Respondent.**

**No. WD 50217.**

Missouri Court of Appeals,
Western District.

Sept. 26, 1995.

LAURA DENVIR STITH, Presiding Judge.

Appellant Cathy C. Runyan appeals from the judgment of the trial court on Respondent Gregory N. Runyan's Motion to Modify Dissolution Decree as to Custody and Child Support. Mrs. Runyan contends that the trial court erred in calculating the amount of child support by: (1) including the amount that she received from Mr. Runyan as maintenance in her gross income and by deducting the same amount from Mr. Runyan's gross income; (2) by not prorating the amount of health insurance paid by Mr. Runyan for the four children subject to the child support order; and (3) by considering income that Mrs. Runyan received from the sale of a book as part of her gross income because this income is of a "sporadic" and "nonrecurring" nature. Mrs. Runyan also contends that the trial court erred in not ordering Mr. Runyan to pay her attorneys' fees incurred at the trial level. Finally, Mrs. Runyan appeals the trial court's refusal to grant her Motion for a New Trial on the grounds of newly discovered evidence.

The judgment of the trial court is reversed and remanded with directions to recalculate the amount of child support: (1) without including maintenance paid by Husband in Wife's gross income and without deducting the same from Husband's gross income; and (2) prorating the medical insurance paid by Husband. The trial court's refusal to grant Wife attorneys' fees is affirmed, as is its inclusion in Wife's gross income of the revenues Wife received from the sale of her book. The trial court's denial of Wife's motion for a New Trial is also affirmed.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

When the marriage between Cathy Runyan (Wife) and Gregory Runyan (Husband) was dissolved in 1992, Mr. and Mrs. Runyan were awarded joint legal custody of their five children.[1] Wife was awarded physical custody of all five children. Husband was ordered

Lyle L. Odo, Platte City, for appellant.

Gary M. Steinman, Schulz, Bender, Maher, Lee, Sexton & Hill, P.C., Gladstone, for respondent.

Before LAURA DENVIR STITH, P.J., and LOWENSTEIN and HANNA, JJ.

1. The five children, at the time of the divorce, were Aimee, age 19, Jonathan, age 17, Jeffrey, age 15, Regina, age 12, and Karen, age 9.

to pay $1,200.00 per month as child support for all five children, and $500.00 per month as maintenance for Wife.

Two years later, in April, 1994, Husband filed a Cross–Motion to Modify Dissolution Decree as to Custody and Child Support. In that Motion, Husband requested: (1) that the physical custody of Regina be transferred from Wife to him and that he be awarded child support for Regina; (2) that the amount of child support that he pays to Wife be reduced to reflect the fact that their oldest daughter, Aimee, had married and thus was emancipated; and (3) that the child support for Jeffrey and Jonathan be paid directly to them because they were attending college away from home.

After a hearing, the trial court modified the decree in the first two respects requested by Mr. Runyan, but denied Mr. Runyan's request that child support be paid directly to Jeffrey and Jonathan. The trial court also ordered that child support should be calculated on a "split custody" situation due to the awarding of physical custody of Regina to Husband, while the physical custody of the other three minor children remained with Wife. Pursuant to Rule 88.01, a Form 14 was completed for both Wife and Husband.

At the time of the hearing, Wife was a full-time student at Missouri Western State College. Wife also ran a business selling marbles out of her home. She earned $4,270.00 in 1993 from the sale of a book that she wrote about marble collecting. Wife testified that the sales resulted from a one-time article about her in a national marble magazine, and that she did not expect to receive any future appreciable earnings from the sale of her book because its topic and appeal were limited in scope. Wife's only other sources of income were the $8,210.00 that Wife had received from Husband for maintenance under the original Decree of Dissolution, $120.00 in wages and tips for waitressing during 1993, and $12.00 in taxable interest.

In filling out a Form 14 for Wife, the trial court added not just the amounts she had earned in 1993, but also the maintenance received by Wife in 1993 under the court's original decree, in determining that she had a gross income of $12,612.00 per year, or

$1,051.00 per month. He used this figure in determining the amount of child support owed by Wife to Husband due to the fact that Husband now had primary custody of Regina.

The trial court found that Husband's gross monthly income was $4,802.00, but from this number the trial court subtracted the $500.00 in maintenance from Husband's gross monthly income. He used the resulting figure of $4,302.00 in determining Husband's child support obligation to Wife resulting from her primary custody of the other three unemancipated children. To that amount he then credited Husband with the entire $135.50 per month that he paid for health insurance for all four unemancipated children.

Based on these figures, the trial court determined that the net child support obligation due to Wife from Husband was $754.00 per month. The trial court also ordered the respective parties to pay their own attorneys' fees.

On September 27, 1994, Wife filed a Motion for a New Trial. In her motion, Wife contended that a new trial should be granted based on the fact that subsequent to the trial she found an error on her 1993 Federal Income Tax Return. This income tax return had been used to calculate her gross income. As a result of this error, her gross income for 1993 was reported as $12,612.00, when it was actually $10,270.00.

At the hearing on the motion, Wife further contended that a new trial should be granted based on her testimony that following the trial her daughter received serious injuries which necessitated in-hospital care for several weeks. Wife testified that she provided constant care for her daughter from October 12, 1994, until her recovery in late January, 1995. As a result, Wife had been forced to drop out of school for the semester and Wife's income for that period was limited to conducting a mail-order business out of her home.

The court denied Wife's Motion for a New Trial on October 19, 1994. This timely appeal followed.

## II. *LEGAL ANALYSIS*

### A. *Standard of Review.*

 The judgment of the trial court will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The trial court has broad discretion in determining the amount of maintenance, and an appellate court will not interfere absent an abuse of discretion. *Colabianchi v. Colabianchi*, 646 S.W.2d 61, 66 (Mo. banc 1983).

### B. *The Trial Court Erred in Including Amounts Wife Received From Husband In Maintenance In Calculating Child Support.*

Under Points I and II, Wife contends the trial court erred in calculating Husband's child support obligations by: (1) including the amount that Wife received as maintenance from Husband in Wife's gross income and by deducting the same amount from Husband's gross income; (2) by not prorating the amount of health insurance paid by Husband for the four children subject to the child support order; and (3) by including in Wife's gross income the $4,270.00 that she received from the sale of the book on marbles because this income is of a "sporadic" and "nonrecurring" nature.

Rule 88.01 sets forth guidelines which the trial court must follow in calculating child support obligations. Rule 88.01 provides that:

When determining the amount of child support to order, a court or administrative agency shall consider all relevant factors, including:

(a) the financial resources and needs of the child;

(b) the financial resources and needs of the parents;

(c) the standard of living the child would have enjoyed had the marriage not been dissolved;

(d) the physical and emotional condition of the child; and

(e) the educational needs of the child.

Rule 88.01 further provides that:

There is a rebuttable presumption that the amount of child support calculated pursuant to Civil Procedure Form No. 14 is the amount of child support to be awarded in any judicial or administrative proceeding for dissolution of marriage, legal separation, or child support.

 Form 14 consists of a worksheet for calculating the presumed child support obligation. The form contains directions for use, comments, and a schedule setting out basic child support obligations. The provisions of Rule 88.01 and the criteria under Form 14 for calculating presumed child support are mandatory. *Campbell v. Campbell*, 811 S.W.2d 504, 506 (Mo.App.1991). The trial court "must take into consideration the factors set forth in Rule 88.01 and the calculations as provided in Form 14" in determining child support unless it finds that the amount as calculated is unjust or inappropriate. *Umphenour v. Umphenour*, 831 S.W.2d 764, 767 (Mo.App.1992).

### 1. *The Trial Court Erred by Including The Amount that Wife Received as Maintenance in Wife's Gross Income and Deducting the Same Amount from Husband's Gross Income.*

 Wife contends the trial court erred by including the amount that she received in maintenance from Husband in her gross income and by subtracting the same amount from Husband's gross income. The directions for the completion of Form 14 state that gross income includes "spousal support actually received from *a person not a party to the order.*" (emphasis added). In other words, only maintenance received from a spouse other than the one from which child support is being sought is to be included in the calculation of gross income. This makes sense, for the purpose of this portion of Form 14 is to determine each party's individual resources from other sources. *Accord Wagner v. Wagner*, 898 S.W.2d 649 (Mo.App. 1995). The trial court, therefore, erred by including the amount that Wife received as maintenance from Husband in Wife's gross income.

The trial court also subtracted this same amount from Husband's gross income. The directions to Form 14 state that the court should subtract from the monthly gross income "the monthly amount of any other court or administrative order for spousal support to the extent that such payments are actually being made to *a person not a party to the action*." (emphasis added). Because the monthly maintenance payments that Husband makes to Wife are made to a person who *is* a party to the action, it was similarly error for the trial court to subtract this amount from Husband's gross monthly income. On remand, Form 14 should be refigured using corrected figures.

## 2. The Trial Court Erred by not Prorating the Amount that Husband Paid for Health Insurance for the Four Children Subject to the Child Support Order.

Wife also contends that the trial court erred in crediting Husband the entire amount of $135.50 that he pays for health insurance for the four children when calculating the amount of child support. Wife contends that this amount should have been prorated to reflect the split custody of the children.

It is uncontested that each parent has physical custody of at least one child. The comments for Form 14 specifically state that:

> Split custody refers to those circumstances in which there is more than one child and each parent has physical custody of one or more but not all children.... In those instances where one parent is providing the costs of an item for all children, i.e., health insurance, the gross amount of such cost is to be prorated among the children for purposes of completing the form.

The trial court did not prorate the amount of child support but instead credited Husband for the entire amount paid for all four children. In light of the split custody of the children, the trial court instead should have prorated the health insurance for the four children as required by Form 14.

Husband nevertheless contends that it was correct for the trial court not to prorate the health insurance because the "health insur-ance costs are the same whether there is one child or seven on [Husband's] policy." We need not determine whether the cost of insurance should be prorated in such a case, for Husband offers no citation to the record to support this contention. In the absence of such evidence, the trial court should have prorated the insurance cost.

## 3. The Trial Court did not Commit Reversible Error by Including the Amount that Wife Received from the Sale of her Book as Part of her Gross Income.

Wife also contends that the trial court should not have included the revenues from the sale of her book in her gross income because this income was of a "sporadic" and "nonrecurring" nature. Wife contends that the book would not produce the same income in the future because this revenue was due to a one-time article in a national magazine.

The directions for Form 14 state that "[i]ncome earned from a second job of a sporadic or nonrecurring nature *may* be included in whole or in part in appropriate circumstances." (emphasis added). The directions do not further define the type of income that is "sporadic" or "nonrecurring," nor do they state what constitutes appropriate circumstances, and neither party has cited any cases which discuss these issues. We do find some guidance, however, in *Harrison v. Harrison*, 871 S.W.2d 644, 646 (Mo.App.1994).

In *Harrison*, the trial court determined the wife's gross monthly income based on her average income for a seven-month period. The wife contended on appeal that the trial court erred in relying on these figures because they reflected earnings made "during the busy season for her employment," and did not "take into account the substantial drop in her income during the remainder of the year." *Id.* at 646. The court of appeals found the trial court acted within its discretion, stating: "[a] trial court has a difficult task in determining the monthly gross income of a party who is compensated by means other than an established, recurring salary." *Id.* The trial court could not "ascribe to speculative evidence," but was bound to consider "the evidence presented at trial that is substantive and probative." *Id.*

Similarly, this Court concludes that it was within the trial court's discretion to include the revenues from the sale of the book in Wife's gross income. The evidence before the trial court was that, while the article about the Wife and her book sales may not be repeated in the future, there was no evidence that Wife would not continue to run the marble business from her home. Based on the evidence presented, the trial court did not abuse its discretion in including these earnings in Wife's gross income.[2]

### C. The Trial Court's Determination Not to Award Attorneys' Fees Was Within Its Discretion.

Finally, Wife contends that the trial court should have ordered Husband to pay Wife's attorneys' fees in the trial court due to the economic disparity between the parties and because the Motion to Modify was filed by Husband. Wife also contends that the fact that Wife was awarded $1,800.00 toward her attorneys' fees on appeal only six months later is evidence that the trial court erred in not awarding her the attorneys' fees she incurred at the trial level.

Pursuant to section 452.355(1), RSMo 1994,[3] the trial court has discretion to order a party to pay the other party's attorneys' fees, as follows:

> The court from time to time after considering all relevant factors including the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding ... and for attorney's fees....

§ 452.355.1. Some of the factors to be considered by the trial court in awarding attorneys' fees include the financial resources of both parties and the extent to which the conduct of one spouse required the other spouse to expend funds on attorneys' fees. *Ansevics v. Cashaw*, 881 S.W.2d 247, 250 (Mo.App.1994). An award of fees will "not be overturned on appeal absent a clear abuse of discretion." *Id.*

Wife contends that the trial court erred in not ordering Husband to pay her attorneys' fees due to the economic disparity of the parties. The parties financial condition "is not a controlling factor," but is only one of the relevant factors for the trial court to consider in determining whether to award fees. *Rich v. Rich*, 871 S.W.2d 618, 627 (Mo.App.1994). While Wife points to the fact that Husband filed the Motion to Modify, there was no evidence that this was done frivolously or in a malicious manner to cause Wife economic burden.

It is true that Wife was awarded $1,800.00 in attorneys' fees to cover costs of her appeal only six months after the trial court denied Wife's request that Husband be required to pay her trial counsel's attorneys' fees. Wife claims that this demonstrates a fatal inconsistency and requires remand for a redetermination of the attorneys' fee issue, citing *Orth v. Orth*, 637 S.W.2d 201 (Mo.App.1982). *Orth* held that it was error for the trial court to deny wife's attorneys' fees on appeal where the Court had just granted her attorneys' fees at the trial court level and there was no evidence of a change of circumstances to justify the inconsistent orders. *Id.* at 207.

*Orth* is not controlling here, however. It would have been within the trial court's discretion here to order Husband to pay Wife's attorneys' fees, but it was not an abuse of discretion, under *Orth*, for the Court to order each party to pay their own attorneys' fees at trial simply because Husband was ordered to pay Wife $1,800.00 in fees on appeal. Wife presented evidence at the hearing on her motion for new trial that one of the minor children in Wife's custody had been seriously injured, causing financial hardship for Wife during her daughter's convalescence, and causing Wife to temporarily drop out of school. This was evidence of a change of circumstances and justified the granting of attorneys' fees on appeal despite the fact the trial court had not believed she was entitled to attorneys' fees at the trial level.

---

**2.** Should it be that, since 1993, Wife has not earned income from her marble business, nor has she earned other comparable income, she could, of course, file a new motion to modify based on what would then be concrete evidence rather than speculation as to future income.

**3.** All statutory references are to RSMo 1994 unless otherwise indicated.

Nonetheless, we note that on remand the trial court is free to reconsider whether some trial level attorneys' fees should be awarded to Wife in light of the adjustments in Wife's income required elsewhere in this opinion.

### D. The Trial Court Properly Denied Wife's Motion for a New Trial.

Finally, Wife contends the trial court erred in not granting her Motion for New Trial. Wife asserts a new trial should have been granted based on newly discovered evidence, including the fact that subsequent to the trial she found an error on her 1993 Federal Income Tax Return, which was used to calculate her gross income. As a result of this error, her gross yearly income was approximately $2,300.00 less than the amount used by the trial court in calculating child support. Wife also contends that a new trial should have been granted based on the fact that, following the trial, her daughter received serious injuries which necessitated in-hospital care for several weeks. As a result, Wife's only source of income for several months was a mail order business out of her home.

The trial court has wide discretion in ruling on a motion for a new trial and is vested with substantial discretion over matters of fact in ruling on new trial motions. *Oventrop v. Bi–State Devel. Agency,* 521 S.W.2d 488, 492 (Mo.App.1975). A party seeking a new trial on the ground of newly discovered evidence must show:

(1) The evidence has come to his knowledge since trial,

(2) due diligence would not have uncovered the evidence sooner,

(3) the new evidence is so material it would probably produce a different result,

(4) the new evidence is not cumulative,

(5) the affidavit of the witness must be produced or its absence accounted for, and

(6) the object of the evidence is not to impeach the character or credit of a witness.

*Carthen v. Jewish Hosp. of St. Louis,* 694 S.W.2d 787, 800–01 (Mo.App.1985).

Wife's affidavit and testimony at the hearing on the motion are devoid of any evidence that due diligence would not have uncovered the error on Wife's tax return. In fact, Wife filed her tax return at least three months before the trial court hearing. This was sufficient time for Wife to discover the error. Wife thus failed to show that due diligence would not have uncovered the evidence sooner.

The injury to Wife's daughter and the resulting reduction in Wife's income also are not grounds which support a motion for a new trial. It is uncontested that this accident occurred one month after the trial herein. Thus, it did not qualify as newly discovered evidence.[4]

For the reasons stated above, this Court holds that the judgment of the trial court is reversed and remanded with directions to recalculate the amount of child support: (1) without including maintenance paid by Husband in Wife's gross income; (2) without deducting such maintenance from Husband's gross income; (3) prorating the medical insurance; (4) reviewing the other income calculations in light of the record to ensure that correct figures are used; and (5) reexamining the attorneys' fee issue if the court, in its discretion, believes that the above changes to the court's order would affect the determination not to award attorneys' fees to Wife for her counsel's services at the trial level. We affirm the trial court's inclusion of the revenues that Wife received from the sale of her book in her gross income, as well as its denial of Wife's Motion for a New Trial.

All concur.

4. We do not express any opinion as to whether this evidence would have sufficed as a change in circumstances which would justify a new motion to modify the decree if the requisite standard could be satisfied. *See Buckman v. Buckman,* 857 S.W.2d 313, 317 (Mo.App.1993) (a prima facie change of circumstances is established if the current support deviates from the support prescribed by Rule 88.01 by twenty percent or more).