**LONGVIEW OF ST. JOSEPH, INC., Appellant,**

v.

**CITY OF ST. JOSEPH, Respondent.**

No. WD 50629.

Missouri Court of Appeals,
Western District.

March 26, 1996.

Creath S. Thorne, Stephen H. Briggs, St. Joseph, for appellant.

A. David Peppard, St. Joseph, for respondent.

Before SPINDEN, P.J., and BERREY and LAURA DENVIR STITH, JJ.

SPINDEN, Presiding Judge.

Longview of St. Joseph, Inc., has been offended by St. Joseph's refusing to let it operate a solid waste transfer station and recycling center on a nearly four-acre site in the city, and by the city's classifying its operation as a junk yard. After its request for a use permit was turned down by St. Joseph's city council, Longview took its case to the circuit court, but the circuit court sided with the city council. Longview appeals, contending that the circuit court's ruling that the city had not acted arbitrarily and capriciously was wrong, and it asserts that the court erroneously failed to rule on the constitutional issues it raised. We affirm the circuit court's judgment.

Longview first proposed operating its facility on a 23–acre tract on Alabama Street, but pared it back to 3.8 acres. The city had zoned the tract M–2, St. Joseph's least restrictive zone. Longview described its proposal as "a trucking terminal where solid waste would be transferred to larger trucks inside a building out of public view. . . . No disposal or dumping of waste would occur on the property. . . . No overnight storage of waste would be done. . . . No hazardous, flammable or liquid wastes would be accepted. . . . No processing of solid waste would go on."

After Longview's president explained to city officials in October 1992 what Longview wanted to do, assistant city planner Richard Rossiter consulted with one of St. Joseph's attorneys and decided that Longview's operation should be classified as a junk yard. The attorney had reached this conclusion after reading *Tohickon Valley Transfer, Inc. v. Tinicum Township Zoning,* 97 Pa.Cmwlth. 244, 509 A.2d 896 (1986), in which the court held that "trash transfer stations" were "junkyards" under a local zoning code.

Although Longview disputed the junk yard classification, it applied in November 1992 for a special use permit to operate one. St. Joseph's planning commission conducted two

public hearings in December 1992 and January 1993 during which Longview explained its operation. The city staff presented its report to the commission and several opponents voiced their concerns. The commission recommended that the city council deny Longview's application.

In March 1993, the city council considered the application at a public hearing during which it heard evidence in addition to considering the planning commission's record. At this hearing, Longview challenged the classification and the constitutionality of the city's requiring it to obtain a special use permit. The city council affirmed the classification and voted unanimously to deny Longview's application.

Longview then asked the circuit court to review the matter. Its six-count petition sought a writ of *mandamus,* a writ of *certiorari,* declaratory judgment, injunctive and equitable relief, damages, and judicial review pursuant to § 536.100 RSMo 1994. The parties presented evidence during a hearing on October 28, 1994. The circuit court dismissed all of the counts except for the one seeking a writ of *certiorari.* The circuit court issued a writ on December 2, 1994. On December 23, 1994, the circuit court issued its judgment finding that the city council's decision was supported by competent and substantial evidence and was not arbitrary, capricious, or illegal, or an abuse of discretion. Longview appeals.

## Waiver of Constitutional Issues

■ As a preliminary matter, we address St. Joseph's contention that Longview waived its constitutional claims by not properly pleading or timely raising them. We disagree.

Longview sent a letter to the assistant city planner in March 1993 advising him of the constitutional issues which it believed were at issue, and Longview referred to this letter when it appeared before the city council. In November 1993, Longview filed a motion *in limine* setting forth its constitutional claims and asserted these issues at the hearing on the motion *in limine* in January 1994. Longview also raised the constitutional claims and presented evidence in support of

them at the October 1994 hearing. St. Joseph did not object that these issues exceeded the scope of the pleadings. At the final hearing in November 1994, Longview specifically asked the court whether the evidence regarding the constitutional issues would "stand on the record and be part of the evidence before the Court with its final decision?" The circuit court said that it would, and St. Joseph did not object.

■ Evidence presented at trial without objection automatically amends the pleadings to conform to the evidence, and the issues are deemed to be tried by consent. *Murray v. Ray,* 862 S.W.2d 931, 934 (Mo.App.1993). Issues tried by consent are treated as if they had been raised in the pleadings. *Shelton v. Julian,* 610 S.W.2d 129, 131 (Mo.App.1980). Longview presented evidence in support of its constitutional claims without objection, so we shall treat those issues as if Longview had pleaded them.

## Constitutional Issues

Longview argues that the circuit court erred by refusing to rule on its constitutional claims. This is partly true. Most of Longview's constitutional attacks alleged due process violations. The circuit court specifically found "that the City Council's decision ... was not arbitrary, capricious, or illegal; and, that the City Council's decision ... was not an abuse of discretion." To the extent that this ruling was correct, it answered Longview's due process contentions. Longview, however, raised an equal protection issue and asserted a "takings" violation apparently not ruled on by the circuit court.

Rule 84.14 authorizes this court to "give such judgment as the [circuit] court ought to give." We, therefore, will consider Longview's equal protection and "takings" issues and give the judgement which the circuit court should have given. Because Longview did not seem to understand at oral argument how the circuit court's ruling answered its due process contentions, we will explain that, too.

## Rational Basis for City Council's Decision

Longview first claims that St. Joseph's reliance on city ordinance § 26–310, governing

use of property zoned M–2, was unconstitutional because the city had permitted other, much "heavier," uses of M–2 tracts. Moreover, Longview asserts, its operation would meet the ordinance's performance standards, and the city's classifying it as a junk yard was irrational. In a related point, Longview argues that the city council did not have a sufficient basis for denying the application.

■■■ These issues implicate the due process clauses of the Missouri and United States constitutions[2] which require that zoning regulations be reasonable and bear a reasonable relationship to a community's health, safety, morals or welfare. *White v. City of Brentwood,* 799 S.W.2d 890, 892 (Mo. App.1990); *Euclid v. Ambler Realty Company,* 272 U.S. 365, 395, 47 S.Ct. 114, 121, 71 L.Ed. 303 (1926). A zoning ordinance may be proper on its face but still be a due process violation because of the unreasonable or arbitrary manner in which a city applies it to a particular tract. *State ex rel. Barber & Sons Tobacco Company v. Jackson County,* 869 S.W.2d 113, 117 (Mo.App.1993);[3] *Nectow v. Cambridge,* 277 U.S. 183, 187–88, 48 S.Ct. 447, 448, 72 L.Ed. 842 (1928).

■■■ We presume that a zoning ordinance is valid, and the party challenging its application has the burden of proving, by clear and convincing evidence, that the ordinance is unreasonable as applied. *Barber & Sons,* 869 S.W.2d at 117. We resolve any uncertainty as to the reasonableness of the zoning in the government's favor. *Id.*

**2.** Mo. CONST. art. I, § 10 (1945); U.S. CONST. amend. XIV.

**3.** This case could be interpreted as also espousing the much-maligned doctrine of substantive due process when it says, "[E]ven when zoning does substantially relate to the public welfare, a reviewing court … may find the zoning to be unconstitutionally unreasonable if its detriment to private interests outweighs the public benefit." *Barber & Sons, supra.* We do not interpret this statement as articulating a substantive due process standard. Both the United States and Missouri supreme courts have criticized the doctrine in this context as tantamount to judicial legislating. "The day is gone," the United States Supreme Court has said, "when this Court uses the Due Process Clause [to] strike down state laws, regulatory of business and industrial conditions, because they may be unwise, improvident, or out of harmony with a particular school of thought."

The ordinance challenged by Longview states its general intent and purpose:

> For the purpose of promoting health, safety, morals or the general welfare of the community, the council of St. Joseph finds it necessary to adopt these regulations made in accordance with a comprehensive plan and designed to lessen congestion in the streets, to secure safety from fire, panic and other dangers; to promote health and the general welfare, to provide adequate light and air, to prevent the overcrowding of land, to avoid undue concentration of population, to preserve features of historical significance, to facilitate the adequate provisions of transportation, water, sewage, schools, parks and other public requirements.

The standards governing the city council's decision whether to grant or deny a special use permit are set out in § 26–400 of St. Joseph's code:

> Any of the following uses and only the following uses may be located in those districts as indicated, following approval of a special use permit by the city council, under the same procedure as a change in zoning and under such conditions as to operation, site development, parking, signs, accessory uses and time limit as may be necessary in order that such use will not injure the appropriate use of neighboring property, and will conform to the general intent and purpose of this ordinance[.]

*Williamson v. Lee Optical of Oklahoma, Inc.,* 348 U.S. 483, 488, 75 S.Ct. 461, 464, 99 L.Ed. 563 (1955). Judge Blackmar said, in *Coldwell Banker Resid. Real Estate Serv., Inc. v. Missouri Real Estate Comm'n,* 712 S.W.2d 666, 668 (Mo. banc 1986)(footnotes omitted), "It is not for us to determine whether [a business regulatory] enactment is wise or not. We are obliged to sustain legislation which is utterly foolish, absent a valid constitutional challenge…. There was a time when the Supreme Court of the United States struck down economic regulations with some regularity as violative of due process, but that day is past." The Supreme Court of Missouri has recognized that the doctrine still has some application to issues implicating fundamental rights, *State ex rel. Cavallaro v. Groose,* 908 S.W.2d 133, 135 (Mo. banc 1995), but this is not such a case.

Longview emphasizes that its use was much less obnoxious than many other uses of land zoned M–2 permitted by St. Joseph. Those other uses included asphalt manufacturing, battery manufacturing, chlorine production, coal distillation, hide tanning, fertilizer manufacturing, livestock auctioning, poultry raising and processing, sand blasting, a slaughterhouse, tar product manufacturing and wood distillation. While the contention may be accurate, it misses the point.

The point is whether St. Joseph's application of an ordinance, otherwise proper on its face, was so arbitrary or unreasonable as to constitute a violation of Longview's due process rights. It was not. The city council denied Longview's application only after reviewing the record and recommendations of the planning commission and after receiving additional evidence. It determined that Longview's proposed use was not compatible with the surrounding area and would adversely affect the use of neighboring property, especially a food production plant adjacent to the cite whose manager expressed strong opposition to Longview's proposal.

This determination was based on evidence concerning the effect of Longview's proposed use on area economic development, property values, noise and traffic conditions, air pollution, and health and safety issues. The council also considered its effect on pedestrian and traffic access and safety resulting from the site's proximity to an elementary school.

■ In reviewing the city council's decision in light of the evidence it had before it, we must not substitute our judgment for the council's judgment, unless it appears that the decision was arbitrary and unreasonable. *Vatterott v. City of Florissant,* 462 S.W.2d 711, 713 (Mo.1971).

■ Many residents told the council that they would move from the area if the council approved the application. The council also heard evidence that the proposal would deter area economic growth, would lower area property values, and was a safety hazard to nearby residents, children attending a nearby elementary school, and a food production plant adjacent to the site.

Before the city council considered the matter, St. Joseph's planning commission conducted two public hearings in which residents living near the site voiced concerns about drainage, flooding, pests, decreased property values, and increased truck traffic. Stephen Price, director of economic development for St. Joseph's Chamber of Commerce, opined that the solid waste transfer station should not be next to a food company and would contribute to overfilling the city's landfill. He also opined that the proposal would deter area economic growth. The commission received a petition, signed by 1100 persons, opposing Longview's application.

Several days before the city council hearing, city staffers presented an impact analysis report to the council. The report predicted that the proposal would significantly increase truck traffic on Alabama Street and that this would be detrimental to the safety of students attending a nearby elementary school. The report also noted that Alabama Street was built in 1955 and was not intended for continuous, heavy truck traffic. Because the street was maintained by state officials, St. Joseph would not be able to repair quickly any damage to the street. The report also noted that the site was in a designated flood area.

Accompanying the report was a memorandum by Edmund Waddell, senior city planner, who opined that the proposal was incompatible with area residential development and the nearby elementary school. He expressed particular concern that the approximately 70 trucks expected to enter the site each day would cause waste spillage and increase the risk to residents and students attending the elementary school. He opined that the increased truck traffic would decrease area property values and might discourage the region's industrial growth.

This gave the council a more-than-sufficient basis for denying Longview's application. We concur with the circuit court that St. Joseph's application of the ordinance to Longview's proposal was not arbitrary or capricious. We fail to discern a due process violation.

Longview next complains that it was denied due process because St. Joseph did not

give it an opportunity to appeal the city's classification of its proposal as a junk yard and requirement that it obtain a special use permit. St. Joseph responds that Longview could have challenged the classification by appealing to the board of adjustment pursuant to § 89.100, RSMo 1994,[4] and § 26–520[5] of the city's code.

Chapter 89 governs municipal zoning and planning activities. Section 89.090 authorizes municipal boards of adjustment to decide appeals from "any order, requirement, decision or determination made by an administrative official in the enforcement of these sections or of any ordinance adopted pursuant thereto." Longview argues that this statute did not aid it because St. Joseph's ordinances limited the board of adjustment's appellate authority to decisions by the superintendent of building regulations and because § 26–520 specifically prohibited appeals from decisions by the planning commission or city council.

Classification of Longview's proposed business as a junk yard was not a decision of the city council or planning commission. It was an administrative decision by an assistant city planner who consulted with a city attorney.

▇▇ In any event, Longview had the opportunity to challenge the classification at the hearing before the city council in March 1993. There, Longview's president explained why he did not believe his business should be classified as a junk yard. He argued that his business was a "trucking terminal." In its decision denying the permit, the council specifically rejected this contention. It found that Longview's operation was properly classified as a "junkyard or salvage yard," pursuant to § 26–400(u) of the city's code.

Moreover, had the council not heard Longview's position on the matter, § 536.150.1, RSMo 1994, provided it a means of appeal. That statute says:

4. Section 89.100 says, "Appeals to the board of adjustment may be taken by any person aggrieved ... by any decision of the administrative officer."

5. This ordinance authorizes appeals to the board of adjustment by any person aggrieved by a decision of the superintendent of building regula-

When any administrative officer or body existing under the constitution or by statute or by municipal charter or ordinance shall have rendered a decision *which is not subject to administrative review,* determining the legal rights, duties or privileges of any person, including the denial or revocation of a license, and there is no other provision for judicial inquiry into or review of such decision, such decision may be reviewed by suit for injunction, certiorari, mandamus, prohibition or other appropriate action[.][6]

Longview had a sufficient means for appealing the classification. Longview raised the classification issue to the circuit court at the hearings in January 1994 and in October 1994. At the October 1994 hearing, Longview challenged the classification directly and presented evidence on the matter. Its due process rights were not violated.

▇▇ In challenging the classification on this appeal, Longview contends that the classification lacked a rational basis and was, therefore, an unconstitutional violation of its due process rights. Hence, the issue is whether St. Joseph acted arbitrarily and without a rational basis in classifying Longview's operation as a junk yard.

Section 26–400 of St. Joseph's code required a special use permit for designated uses, including a "junkyard or salvage yard." Section 26–010 defined "junk" as "old or scrap copper, brass, rope, rags, batteries, paper, trash, rubber debris, waste or junked, dismantled or wrecked automobiles, or parts thereof, iron, steel and other old or scrap ferrous or nonferrous material." It defines "junkyard" as "an establishment, area or place of business maintained, operated or used for the storing, keeping, buying or selling of junk or for the operation of an automobile graveyard."

tions. Section 26–500 says, "The superintendent of the building regulations or his duly authorized representative shall have the power to enforce the provisions[.]"

6. We added the emphasis.

■ Even if the circuit court disagreed with St. Joseph's interpretation of its ordinance, the court was obligated to give the city's interpretation much deference. "The interpretation placed upon a zoning ordinance by the body in charge of its enactment and application is entitled to great weight." *Taylor v. City of Pagedale,* 746 S.W.2d 576, 578 (Mo.App.1987). St. Joseph's interpretation was not so lacking of rationality as to render it arbitrary and capricious, especially given the city's search for assistance in the caselaw and considering the *Tohickon Valley Transfer* case before making its determination.

## Equal Protection

Next, Longview claims that its equal protection rights were violated because St. Joseph did not require other businesses with operations like Longview's to get a special use permit and because St. Joseph was planning to operate its own recycling center.

■ This fails to present a proper equal protection issue. As this court said in *Tyler v. Mitchell,* 853 S.W.2d 338, 341 (Mo. App.1993):

It is not enough under the equal protection clause for a claimant to assert that he has been deprived of a benefit granted to others....

The equal protection clause guarantees that similar individuals will be dealt with in a similar manner by the government. It does not reject the government's ability to classify persons or "draw lines" in the creation and application of laws, but it does guarantee that those classifications will not be based upon impermissible criteria or arbitrarily used to burden a group of individuals.

. . . .

*[T]he equal protection guarantee has nothing to do with the determination of whether a specific individual is properly placed within a classification.* Equal protection tests whether the classification is properly drawn. It is the guarantee of procedural due process that determines what process is necessary to find that an individual falls within or outside

the scope of a specific classification. Equal protection deals with legislative line drawing and procedural due process with the adjudication of individual claims.

*Id.* (quoting J. Nowak, R. Rotunda, and J. Young, *Handbook on Constitutional Law,* 519 (1978))(emphasis added). A claim that St. Joseph treated Longview differently than other businesses like it raises a due process question—not an equal protection question. We have already concluded that St. Joseph did not treat Longview arbitrarily or unreasonably, so it does not have a justifiable due process complaint.

Had Longview asserted that St. Joseph used its ordinances to unfairly discriminate against garbage haulers and recyclers, it would present a legitimate equal protection claim. However, a claim that other garbage haulers' and recyclers' operations were not classified as junk yards does not implicate the equal protection clause. Nor does Longview's contention that other similar operations were allowed to operate in an M–2 zone.

Longview's contention that St. Joseph was planning to operate its own recycling center did not raise a valid equal protection claim, either, because the claim did not implicate any classification. While it implicated the due process clauses, Longview failed to show that it was treated arbitrarily or unreasonably. Moreover, Longview's proposal included a solid waste transfer station in addition to a recycling center.

## Total Prohibition and "Taking"

Next, Longview claims that St. Joseph's decision to deny its application was arbitrary and unreasonable because the denial's effect was to prohibit this type of business from operating anywhere in the city. Longview argues that the city zoning ordinances totally prohibited solid waste transfer stations. This, Longview complains, constituted a "taking" of its property. Not so.

First, we find no clear and convincing evidence that St. Joseph sought to block Longview from operating anywhere in the city. The focus of this case was on the Alabama Street site. Opposition to the application

focused on problems with Longview's operating at that particular site. We have already concluded that the city council's decision was supported by adequate evidence to overcome any notion that the decision was arbitrary or unreasonable.

Nor was St. Joseph's decision a taking of Longview's property without just compensation. A zoning ordinance which substantially advances legitimate governmental goals of protecting residents from the ill effects of urbanization and assures a city's orderly development and which is applied reasonably and fairly does not give rise to a "takings" claim, especially when the landowner is not prevented from developing the land in other ways. *Agins v. Tiburon*, 447 U.S. 255, 262, 100 S.Ct. 2138, 2142, 65 L.Ed.2d 106 (1980). Even a zoning regulation which significantly limits a tract's development does not constitute a taking so long as it does not extinguish the fundamental attributes of ownership. *Id. See also Penn Central Transportation Company v. New York City*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978)(law placed significant restrictions on repair and modifications of historic landmarks' exteriors). St. Joseph's ordinance did not preclude Longview of all uses of the tract—only its use as a garbage hauling station and recycling center. It was not a "taking."

After reviewing the record completely, we find that the city council's decision was supported by competent and substantial evidence and was not arbitrary, capricious, illegal or an abuse of discretion. We find no basis for a constitutional challenge of St. Joseph's zoning ordinances. We, therefore, affirm the judgment of the circuit court.

All concur.