Hill filed exceptions to the special master's report. After those exceptions were overruled by the master, the parties filed supplemental briefs with this Court, and we heard oral argument.
Standard of Review
In cases in which this Court appoints a master under Rule 68.03, the Court will sustain the master's findings and conclusions "unless there is no substantial evidence to support them, they are against the weight of the evidence, or they erroneously declare or apply the law." State ex rel. Lyons v. Lombardi , 303 S.W.3d 523, 526 (Mo. banc 2010) ; see also Murphy v. Carron , 536 S.W.2d 30, 32 (Mo. banc 1976). The master's findings should receive the "weight and deference which would be given to a court-tried case by a reviewing court" due to "the master's unique ability to view and judge the credibility of witnesses." State ex rel. Woodworth v. Denney , 396 S.W.3d 330, 336-37 (Mo. banc 2013) (internal quotations omitted). In light of this deference, "[t]his Court should exercise the power to set aside the findings and conclusions [of the master] on the ground that they are against the weight of the evidence with caution and with a firm belief that the conclusions are wrong." Id. at 337.
State ex rel. Clemons v. Larkins , 475 S.W.3d 60, 75-76 (Mo. banc 2015).
Analysis
Hill raises two claims in his petition for writ of habeas corpus: (1) that his trial counsel rendered ineffective assistance by misinforming him regarding his parole eligibility; and (2) that his sentences violated due process, because they were based on the judge's mistaken understanding of Hill's parole eligibility.
Rule 91.01(b) provides that "[a]ny person restrained of his liberty within this state may petition for a writ of habeas corpus to inquire into the cause of such restraint." A person is entitled to habeas relief if he or she is "restrained of his [or her] liberty in violation of the constitution or laws of the state or federal government." State ex rel. Carr v. Wallace , 527 S.W.3d 55, 59 (Mo. banc 2017) (quotations, citation, and ellipsis removed). Importantly, "[t]he petitioner bears the burden of establishing that he or she is entitled to habeas relief." State ex rel. Fleming v. Mo. Bd. of Prob. & Parole , 515 S.W.3d 224, 229 (Mo. banc 2017) (citing State ex rel. Nixon v. Jaynes , 73 S.W.3d 623, 624 (Mo. banc 2002) ); see also, e.g. , Clemons , 475 S.W.3d at 76 ; State ex rel. Woodworth v. Denney , 396 S.W.3d 330, 337 (Mo. banc 2013).
Hill did not raise either claim which he now asserts in his direct appeal, or in his motion for post-conviction relief. Generally, habeas relief is not available for claims that are "procedurally barred"-namely, claims that could have been raised on direct appeal or post-conviction review, but were not. Clemons , 475 S.W.3d at 76 (citing Woodworth , 396 S.W.3d at 337 ). Missouri courts excuse claims that are procedurally barred in three circumstances:
(1) a claim of actual innocence or (2) a jurisdictional defect or (3)(a) that the procedural defect was caused by something external to the defense-that is, a cause for which the defense is not responsible-and (b) prejudice resulted from the underlying error that worked to the petitioner's actual and substantial disadvantage [ (the "cause and prejudice" standard) ].
*162 Id. (quoting State ex rel. Zinna v. Steele , 301 S.W.3d 510, 516-17 (Mo. banc 2010) ).
Hill's habeas petition alleges that his failure to raise his present claims earlier is excused, because those claims allege a "jurisdictional defect" in his sentencing, and because he can demonstrate "cause" for, and "prejudice" flowing from, his procedural default. The State disputes that either of Hill's claims alleges a "jurisdictional defect" in the sense that term is understood in the habeas caselaw. The State also argues that Hill failed to establish either "cause" for his delayed assertion of his claim, or resulting "prejudice."
It is unnecessary for this Court to decide whether Hill has established a justifiable excuse for his failure to raise his habeas claims in earlier proceedings. Even if Hill's procedural default is excused, he must still establish an underlying claim that his constitutional rights were violated. The three circumstances excusing a procedural default are merely "gateways," which permit the consideration of the petitioner's underlying claims. " '[G]ateway' habeas claims at best entitle a petitioner 'to review on the merits of the [petitioner's] otherwise defaulted constitutional claim[s].' " In re Lincoln v. Cassady , 517 S.W.3d 11, 17 (Mo. App. W.D. 2016) (quoting State ex rel. Amrine v. Roper , 102 S.W.3d 541, 546 (Mo. banc 2003) ). "Gateway" claims "do not independently support habeas relief, but are the condition precedent to review of claims of constitutional error that are procedurally barred." McKim v. Cassady , 457 S.W.3d 831, 842 n.21 (Mo. App. W.D. 2015) (citation omitted); accord Ferguson v. Dormire , 413 S.W.3d 40, 52-53 (Mo. App. W.D. 2013) (citation omitted).
Here, even if his procedural default was excused, the master's factual findings establish that Hill failed to prove either of his underlying habeas claims. We therefore proceed directly to an analysis of Hill's underlying claims, based on the assumption that he could establish an excuse for his procedural default. See Lincoln , 517 S.W.3d at 20.
I.
Hill's first claim asserts that his counsel misinformed him that he would not be subject to a mandatory minimum prison term on any sentence for first-degree assault of a law-enforcement. Hill's petition alleged that, if counsel had properly advised him that he would be required to serve 85% of any sentence, he "would have accepted the State's plea offer and would be serving lesser overall sentences."
The special master's report expresses doubt that the State extended any pre-trial plea offer to Hill. The report also notes that Hill's counsel was unable to specifically recall whether he informed Hill that he faced no mandatory minimum term of imprisonment. The master did not expressly find, however, that Hill had failed to prove that a plea offer had been made, or that he had failed to prove that his counsel provided incorrect advice concerning his parole eligibility. What the master did find was that Hill had failed to prove that he would have accepted a plea offer if he had known that first-degree assault of a law enforcement officer was a "dangerous felony" subject to the 85% rule. The master's report explains:
Mr. Hill argues that if he knew he was facing the possibility of life without parole, he would not have risked going to trial, but instead would have pled guilty to the State's offer in the hope that the judge would grant him leniency at sentencing. However, the Court finds that even if Mr. Hill had been correctly informed by counsel that first-degree assault of a law enforcement officer was a dangerous felony for which he would be *163 required to serve at least 85% of his prison time, it is implausible that Mr. Hill would have accepted a plea offer under which he still would have risked effective life imprisonment. If a firm plea offer was extended, which the Court doubts, it would have required Mr. Hill to plead guilty to two counts of assault of a law enforcement officer in the first degree and two counts of armed criminal action. The parties were free to argue for any sentence within the range of punishment, including up to life imprisonment on each of the assault of a law enforcement officer counts and any number of years on the armed criminal action counts, and Judge Gant was free to impose concurrent or consecutive sentences. Therefore, Mr. Hill risked possible consecutive life sentences if he chose to plead guilty, which was the same result he faced if he lost at trial. ...
Moreover, the Court finds it particularly unlikely that Mr. Hill would have chosen to plead guilty instead of going to trial in light of Mr. Burdick's testimony that his advice whether to plead guilty or not would depend on the strength of the evidence, and he thought they had a good shot at an acquittal. Mr. Hill knew he was guaranteed to serve prison time if he pled guilty, whereas he could hope to walk out of jail a free man after trial. In addition, Mr. Hill maintained his innocence even at his sentencing hearing, making it highly unlikely that he would have pled guilty to crimes that he continuously denied committing.
(Record citations omitted.)
Even if we assume that the State made a pre-trial plea offer, and that Hill's trial counsel provided ineffective assistance by informing Hill that he faced no mandatory minimum prison term, Hill was still required to show that he relied on that misinformation in choosing to reject the State's plea offer. See Webb v. State , 334 S.W.3d 126, 131 (Mo. banc 2011) (post-conviction relief movant claiming similar misadvice "may be entitled to relief if he proves the facts he has alleged and establishes that he was prejudiced by relying on misinformation"); Welch v. State , 326 S.W.3d 916, 920 (Mo. App. W.D. 2010) (even assuming counsel incompetently misadvised defendant concerning parole eligibility, affirming denial of post-conviction relief where motion court found it "incredible" that defendant would have proceeded to trial if properly advised); Miller v. State , 260 S.W.3d 393, 396 (Mo. App. W.D. 2008) (similar).
Here, the master found Hill would not have pleaded guilty, even if he had been properly advised concerning his parole eligibility. That finding is fully supported by the record. Even accepting Hill's evidence, the State's pre-trial plea offer would have allowed the State to argue for any authorized sentence. Even if Hill had pleaded guilty to only two counts of first-degree assault of a law enforcement officer, and two counts of armed criminal action, he would have faced the prospect of receiving multiple sentences of life imprisonment, and of the sentences running consecutively.[3] Pleading guilty to such serious offenses, pursuant to an "open" plea offer, would have offered Hill relatively few benefits. In addition, his counsel believed that Hill faced a good chance of acquittal, and Hill proclaimed his innocence even at his *164 sentencing hearing. The assessment by Hill and his counsel of his risk of conviction likewise makes it unlikely that parole eligibility would have "tipped the balance" and persuaded Hill to accept a plea offer.
Based on the special master's factual findings, we deny relief on Hill's first habeas claim.
II.
Hill's second habeas claim contends that his sentences violated due process, because Judge Gant sentenced him based on the mistaken belief that first-degree assault of a law enforcement officer was not an 85% crime.
" 'A sentence passed on the basis of a materially false foundation lacks due process of law and entitles the defendant to a reconsideration of the question of punishment in the light of the true facts, regardless of the eventual outcome.' " State v. Pierce , 548 S.W.3d 900, 904 (Mo. banc 2018) (quoting Wraggs v. State , 549 S.W.2d 881, 884 (Mo. banc 1977) ); see also State v. Perry , 548 S.W.3d 292, 301 (Mo. banc 2018).
In order to establish a due-process violation, Hill was first required to prove that Judge Gant harbored an incorrect understanding of Hill's parole-eligibility. But the master's report found that Hill had failed to satisfy his burden of proof: "[t]here is nothing in the record to prove that Judge Gant held a mistaken belief as to Mr. Hill's parole eligibility." While Hill argues that it is unrealistic, and unfair, to expect him to prove what the sentencing judge believed, more than fifteen years after his criminal sentencing, the law is well-established that the burden is on the petitioner to prove his entitlement to habeas relief. The judge's understanding of Hill's parole eligibility is plainly a factual issue, on which Hill bore the burden of proof, and on which the master's findings are entitled to deference. We also note that it is not self-evident that the sentencing court would have misunderstood Hill's parole eligibility. In the Mann case, for example, the prosecution expressly advised the sentencing court, at approximately the same time as Hill's sentencing, that first-degree assault of a law enforcement officer was subject to an 85% minimum term. See 526 S.W.3d at 293. Without proof that Judge Gant held a contrary understanding, Hill cannot establish that his sentences violated his due-process rights.
Based on the master's finding that Hill failed to prove that the sentencing court held an incorrect belief as to his parole eligibility at the time of Hill's sentencing, we deny the second claim asserted in Hill's habeas petition.
Conclusion
Hill's petition for a writ of habeas corpus is denied.
All concur.

At the time of Hill's crimes, first-degree assault of a law enforcement officer was a class A felony, § 565.081.2, RSMo. 1994, which was subject to punishment by imprisonment for "not less than ten years and not to exceed thirty years, or life imprisonment." § 558.011, RSMo. 1994. Armed criminal action was an unclassified felony which could carry any sentence of three years or more. § 571.015, RSMo. 1994.