IN THE MISSOURI COURT OF APPEALS
 WESTERN DISTRICT
JAMES DUNN, )
 Appellant, )
 )
v. ) WD84515
 )
MISSOURI DEPARTMENT OF ) FILED: March 22, 2022
CORRECTIONS, )
 Respondent. )
 Appeal from the Circuit Court of Cole County
 The Honorable Daniel R. Green, Judge
 Before Division Two: Alok Ahuja, P.J., and
 Edward R. Ardini, Jr., and Janet Sutton, JJ.

 James Dunn is currently incarcerated based on sentences he received in 1997

for second-degree murder and armed criminal action. Dunn filed a petition for

declaratory judgment against the Department of Corrections in the Circuit Court of

Cole County. Dunn claimed that the Board of Probation and Parole had incorrectly

recalculated his parole eligibility date. Dunn contended that the Board’s

recalculation was based on new Board regulations which were not in effect at the

time he was sentenced, which changed the minimum prison term on Dunn’s armed

criminal action conviction. Dunn claimed that the Board’s new parole eligibility

calculation conflicted with the governing statutes, and violated multiple

constitutional provisions. The circuit court granted the Department of Corrections’

motion for judgment on the pleadings, and Dunn appeals. We affirm.
 Factual Background

 In June 1997, Dunn was convicted in the Circuit Court of St. Louis County of

second-degree murder, in violation of § 565.021,1 and armed criminal action, in

violation of § 571.015. The charges arose from Dunn’s fatal shooting of Larry

Pearson in Maplewood on March 31, 1996. Dunn was convicted following a jury

trial. The circuit court sentenced him to life imprisonment for both the murder and

armed criminal action convictions, with the sentences ordered to run consecutively.

 Beginning in 1979, § 571.015.1 has provided that, in connection with a first

conviction of armed criminal action, “[n]o person convicted under this subsection

shall be eligible for parole . . . for a period of three calendar years.”

 On August 1, 2019, Dunn received a notice from the Board of Probation and

Parole that he was scheduled for a parole hearing on October 10, 2019. Dunn

alleged that the Board scheduled the October 2019 parole hearing based on its view

that §§ 558.019.3 and .4(1) required him to serve 85% of his sentence for second-

degree murder (with his life sentence calculated at thirty years), and that he was

required to serve an additional three years on his armed criminal action conviction

by operation of § 571.015.1.

 On October 15, 2019, Dunn received another notice from the Board,

informing him that his parole hearing had been rescheduled to June 2036. Dunn

requested an explanation for the seventeen-year delay of his initial parole hearing.

 1 Unless otherwise indicated, statutory citations refer to the 1994 edition of the
Revised Statutes of Missouri.

 2
The Board explained that Dunn’s parole eligibility on his armed criminal action

conviction was governed by the “15 year rule” in the Board’s “Procedures Governing

the Granting of Parole and Conditional Release” (the “Blue Book”).2 Section 19(E)

of the Blue Book specifies that “[o]ffenders serving life . . . sentences . . . may not be

eligible for parole until a minimum of 15 years has been served, except where

statute requires more time to be served.” The Board also informed Dunn that,

although it previously scheduled offenders for an initial parole hearing two years

prior to the conclusion of their minimum prison terms, the Board had adopted a new

rule effective September 1, 2019, under which it was now scheduling offenders for

an initial parole hearing four months prior to their earliest parole eligibility date.

 Dunn filed a petition for declaratory judgment against the Department of

Corrections in the Circuit Court of Cole County on September 1, 2020. Dunn

argued that the Board’s recalculation of his minimum parole eligibility date was in

conflict with various Missouri statutes and regulations. Dunn also alleged that the

Board’s determination that he was required to serve a minimum of fifteen years on

his life sentence for armed criminal action conflicted not only with the governing

statutes, but also with one of the Board’s own pre-2008 regulations. Dunn

contended that the Board’s retroactive application of its newer regulations

constituted an unconstitutional ex post facto law. He also alleged that the

redetermination of his parole eligibility date violated separation of powers

 2 The current version of the Blue Book, revised on January 1, 2017, is available
at https://doc.mo.gov/sites/doc/files/2018-01/Blue-Book.pdf.

 3
principles, as well as Dunn’s constitutional rights to due process of law and to the

equal protection of the laws.

 Both Dunn and the Department filed motions for judgment on the pleadings.

The circuit court granted the Department’s motion for judgment on the pleadings,

and denied Dunn declaratory relief. Following the denial of his motion to set aside

the judgment, Dunn filed the current appeal.

 Standard of Review

 This Court reviews a circuit court’s ruling on a motion for judgment on the

pleadings de novo. Woods v. Mo. Dep’t of Corr., 595 S.W.3d 504, 505 (Mo. 2020)

(citing Mo. Mun. League v. State, 489 S.W.3d 765, 767 (Mo. 2016)). “‘[A] motion for

judgment on the pleadings should be sustained if, from the face of the pleadings, the

moving party is entitled to judgment as a matter of law.’” Id. (quoting Madison

Block Pharmacy, Inc. v. U.S. Fid. & Guar. Co., 620 S.W.2d 343, 345 (Mo. 1981)).

 Discussion

 On appeal, Dunn does not challenge the Board’s determination that he must

serve 85% of his life sentence for second-degree murder, with the life sentence

treated as a thirty-year term of imprisonment. Dunn also does not challenge the

Board’s conclusion that, because his sentences were ordered to run consecutively, he

must serve any minimum prison term on his armed criminal action conviction in

addition to the minimum prison term for his second-degree murder conviction,

before he will become parole-eligible. Instead, Dunn challenges only the Board’s

conclusion that, before Dunn is eligible for parole, he must serve fifteen years on his

 4
life sentence for armed criminal action. Dunn contends that – at least under the

law as it existed at the time of his underlying offense, conviction, and sentencing –

he is only required to serve three years before being eligible for parole on his armed

criminal action conviction.

 Although Dunn contends that the Board’s recalculation of his parole

eligibility date violates multiple constitutional provisions, statutes, and regulations,

all of his claims rely on his interpretation of three legal authorities: § 217.690.4;

§ 571.015.1; and the Board regulation which appeared at 14 C.S.R. 80-2.010(4)(A)(1)

prior to 2008. None of these authorities ever provided, however, that Dunn would

be eligible for parole on his armed criminal action conviction after serving only

three years of his life sentence.

 At the time of Dunn’s offense and conviction, § 217.690.4 specified the

manner in which parole eligibility was determined for offenders serving consecutive

sentences. Section 217.690.4 provided:

 When considering parole for an offender with consecutive
 sentences, the minimum term for eligibility for parole shall be
 calculated by adding the minimum terms for parole eligibility for each
 of the consecutive sentences, except the minimum term for parole
 eligibility shall not exceed the minimum term for parole eligibility for
 an ordinary life sentence.

§ 217.690.4. This provision currently appears in § 217.690.5, RSMo Cum. Supp.

2021.

 Dunn contends that the final phrase of § 217.690.4, which specified that “the

minimum term for parole eligibility shall not exceed the minimum term for parole

 5
eligibility for an ordinary life sentence,” meant that the minimum prison term for

his entire sentencing sequence could not exceed the minimum term applicable to a

single life sentence. This Court squarely rejected that argument in Langston v.

Missouri Board of Probation & Parole, 391 S.W.3d 473 (Mo. App. W.D. 2012), in

which an inmate similarly argued that “no inmate with consecutive sentences can

have a minimum prison term prior to parole eligibility that is longer than the

minimum prison term he would have on a single life sentence.” Id. at 476. We

explained:

 The plain language of [current] section 217.690.5 requires that
 the minimum prison term on each consecutive sentence be added
 together to reach an aggregate minimum prison term prior to parole
 eligibility with the limitation that no individual minimum prison term
 added into the total can itself be greater than the minimum prison
 term for a life sentence.
Id.

 Under Langston, § 217.690.4 permitted an offender’s total minimum prison

term to be longer than the minimum term of a single life sentence, so long as none

of the minimum prison terms on the offender’s individual sentences exceeded the

minimum term for a life sentence. The statute did not prevent the Board from

imposing a 15-year minimum term for Dunn’s armed criminal action sentence, in

addition to the minimum term he is required to serve on his consecutive life

sentence for second-degree murder.

 Dunn also argues that he was eligible for parole consideration on his armed

criminal action sentence after serving three years under § 571.015.1, which provides

that “[n]o person convicted [of armed criminal action] shall be eligible for parole . . .

 6
for a period of three calendar years.” Once again, however, Dunn’s argument has

been squarely rejected by controlling precedent. The Missouri Supreme Court has

explained that

 Section 571.015.1 is written in the prohibitive sense and not as a grant
 of a right. Under this statute, [an individual convicted of armed
 criminal action] is precluded from receiving a parole hearing in the
 first three years of his sentence. It does not give him a vested right to
 a parole hearing immediately upon serving three years of his sentence.
 For the statute to say what appellant wants it to say, it should state,
 “[a] person . . . shall be eligible for parole . . . upon serving three
 calendar years of his sentence.” Instead, the statute states, “[n]o
 person . . . shall be eligible for parole . . . for a period of three calendar
 years.” These two versions have different meanings. Even construing
 the statute liberally in favor of the accused, we cannot extend the
 statute beyond its proper limits. We hold that § 571.015.1 does not
 grant appellant the right to a parole hearing or make him eligible for
 parole upon serving the first three years of his sentence.

McDermott v. Carnahan, 934 S.W.2d 285, 287-88 (Mo. 1996) (citation omitted); see

also McDermott v. Mo. Bd. of Prob. & Parole, 61 S.W.3d 246, 247-48 (Mo. 2001);

Mozee v. Mo. Bd. of Prob. & Parole, 401 S.W.3d 500, 503 (Mo. App. W.D. 2013)

(following McDermott, and rejecting an offender’s argument that “the three-year

period specified in § 571.015.1 establishes not only the minimum period before an

inmate convicted of armed criminal action can be eligible for parole, but also the

maximum period”).

 Dunn argues that the McDermott cases and Mozee were overruled by the

Supreme Court’s more recent decision in Mitchell v. Phillips, 596 S.W.3d 120 (Mo.

2020). In Mitchell, the offender Mitchell was convicted of drug trafficking in the

second degree under § 195.295.3, RSMo 2000, which specified that his sentence

 7
“shall be served without probation or parole.” Years after Mitchell’s sentencing, the

General Assembly repealed § 195.295.3, RSMo 2000. Mitchell argued that, in light

of the repeal of the statute which denied him parole, he should now be considered

parole-eligible. The Supreme Court disagreed. It held that “Mitchell's parole

ineligibility was mandated as part of the punishment within the particular statute

designating the permissible penalty for his offense,” and was therefore “part of his

sentence.” Mitchell, 596 S.W.3d at 123. Because making Mitchell parole-eligible

would alter the sentence imposed at the time of his conviction, the Supreme Court

held that the repeal of § 195.295.3, RSMo 2000 did not have any retroactive effect

on Mitchell’s parole ineligibility. Id. at 125.

 Mitchell did not overrule the Supreme Court’s own earlier decisions in the

McDermott cases, or this Court’s decision in Mozee, sub silentio. Mitchell addressed

the effect of post-conviction, post-sentencing changes to parole eligibility laws. But

neither the McDermott cases, nor Mozee, applied post-conviction statutory

amendments to persons previously sentenced. Instead, those cases interpreted a

provision which has existed in § 571.015.1, unchanged, since 1979. The McDermott

cases and Mozee did not give retroactive effect to any change in the law, and

Mitchell has no effect on their holdings.

 Finally, Dunn contends that he was eligible for parole on his armed criminal

action conviction after three years, under the version of 14 C.S.R. 80-2.010(4)(A)

which existed prior to regulatory revisions in 2008. Prior to 2008, 14 C.S.R. 80-

2.010(4)(A) provided:

 8
 When an inmate has been convicted of a felony where a
 dangerous or deadly weapon is used and is guilty under section
 571.015, RSMo of the crime of armed criminal action, minimum parole
 eligibility is as follows:
 1. First conviction of armed criminal action – an inmate
 must serve a minimum of three (3) calendar years . . .

Subsections 2. and 3. of 14 C.S.R. 80-2.010(4)(A) then described the minimum terms

for offenders who had been convicted of armed criminal action more than once.3

 Although the former version of 14 C.S.R. 80-2.010(4)(A) may be worded

somewhat differently than § 571.015.1, it had the same effect: it simply specified

the minimum amount of time an offender was required to serve before becoming

eligible for parole on an armed criminal action conviction; it did not specify the

maximum period before parole eligibility. Consistent with McDermott’s

interpretation of § 571.015.1, the regulation merely set a floor on an offender’s

parole eligibility on an armed criminal action sentence; it did not decree that an

offender “shall be eligible for parole . . . upon serving three calendar years of his

sentence.” McDermott, 934 S.W.2d at 288.

 The fact that the Board’s pre-2008 regulation did not grant parole eligibility

in all cases after three years is confirmed by subsection 4. of the former version of

14 C.S.R. 80-2.010(4)(A), which provided:

 3 The pre-2008 version of 14 C.S.R. 80-2.010(4)(A) had its genesis in a rule
which was proposed on July 15, 1988, and formally adopted with an effective date of
November 1, 1988. See 13 MO. REG. 1195 (Aug. 1, 1988) (notice of proposed rule); 13 MO.
REG. 1729 (Oct. 17, 1988) (Order of Rulemaking). This version of 14 C.S.R. 80-2010 was
rescinded, and a comprehensively rewritten rule substituted in its place, effective in March
2008. See 32 MO. REG. 2064 (Oct. 15, 2007) (notice of proposed rule); 33 MO. REG. 354 (Feb.
1, 2008) (Order of Rulemaking).

 9
 In all of the cases listed in paragraphs (4)(A)1.-3., if the armed
 criminal action sentence, concurrent sentences, or both, are longer
 than the previously mentioned minimum[s], parole eligibility will be
 determined according to subparagraph (4)(F)2.A. This happens only
 when the minimum eligibility exceeds the mandatory requirement of
 the armed criminal action sentence. This also applies to consecutive
 sentences when appropriate.

 This subsection is unfortunately garbled: there apparently was no

“subparagraph (4)(F)2.A” in the regulation as it existed prior to 2008. Nevertheless,

the pre-2008 version of 14 C.S.R. 80-2.010(4)(A)4 clearly recognized that there

would be cases in which an offender’s “minimum [parole] eligibility exceed[ed] the

mandatory requirement[s]” stated in 14 C.S.R. 80-2.010(4)(A)1-3. In those cases,

the regulation clearly states that “parole eligibility will be determined” under a

different regulatory provision, using a calculation distinct from the minimums

stated in subsections 1. to 3.

 The McDermott cases involved an armed criminal action offense committed

prior to June 1991, see McDermott v. Carnahan, 934 S.W.2d at 286, while the

offender in Mozee committed his armed criminal action offense prior to November

1995. Mozee, 401 S.W.3d at 501. Thus, the offenders in McDermott and Mozee were

subject to the same Board regulations as Dunn. In both cases, the Courts

recognized that the Board’s regulations required the offenders to serve more than

three years on their armed criminal action convictions prior to parole eligibility.

See McDermott v. Carnahan, 934 S.W.2d at 288; Mozee, 401 S.W.3d at 504-05. In

both cases, the Courts held that the Board’s regulations were entitled to be

enforced, and were consistent with § 571.015.1. The application of the Board’s

 10
regulations in the McDermott cases and Mozee is flatly inconsistent with Dunn’s

claim that the Board’s pre-2008 regulations required that he be considered for

parole after three years.

 Dunn has failed to identify any legal authority which required that he be

considered parole-eligible on his armed criminal action sentence after three years,

without regard to the length of his armed criminal action sentence. Instead, the

relevant statutes and regulations merely specified that he was required to serve at

least three years before being considered parole-eligible on that sentence, and that

his parole eligibility on that sentence could not be longer than the minimum prison

term for an “ordinary life sentence.” Dunn has failed to identify any change in the

law subsequent to his offense, conviction, and sentencing, which was retroactively

applied to him. Because the Board’s actions are consistent with the governing

statutes, as those statutes have existed at all relevant times, and because the

Board’s actions did not give retroactive effect to any change in the substantive law,

Dunn’s ex post facto, due process, and separation of powers arguments necessarily

fail.

 Dunn also argues that the Department is judicially estopped from denying

that he became parole eligible on his armed criminal action conviction after three

years. Dunn contends that, in three cases, the Department has taken the position

that an offender sentenced to a consecutive term of life imprisonment for armed

criminal action became parole eligible in three years. Those three cases are Jones v.

Missouri Department of Corrections, 588 S.W.3d 203 (Mo. App. W.D. 2019); Allen v.

 11
Norman, 570 S.W.3d 601 (Mo. App. S.D. 2018); and Lotts v. Payne, No. 4:18-CV-

1087 RWS, 2021 WL 3206698 (E.D. Mo. July 29, 2021), appeal dismissed, No. 21-

2892, 2021 WL 7085175 (8th Cir. Oct. 26, 2021). Dunn argues that the Department

has denied him the equal protection of the laws by calculating his parole eligibility

on his armed criminal action conviction differently from the offenders in the Jones,

Allen, and Lotts cases.

 Notably, Jones, Allen, and Lotts involve similar situations. In each case,

criminal defendants were convicted of first-degree murder, and armed criminal

action, for crimes which they committed before the age of eighteen. In each case,

the defendants were sentenced to life imprisonment without the possibility of parole

on the murder charges, and to consecutive life sentences for their armed criminal

action offenses. The sentences of life without parole on the murder charges were

found to be unconstitutional, due to the offenders’ age at the time of the crimes,

under Miller v. Alabama, 567 U.S. 460 (2012), and Montgomery v. Louisiana, 577

U.S. 190 (2016). In response to the Miller and Montgomery decisions, the Missouri

General Assembly enacted § 558.047, RSMo 2016, the “Miller fix” statute, which

provided that offenders like the defendants, convicted of murder for crimes

committed before the age of eighteen, would be eligible “for a review of his or her

sentence” by the Board of Probation and Parole “after serving twenty-five years of

incarceration on the sentence of life without parole.” § 558.047.1(1), RSMo 2016.

 In Jones, Allen, and Lotts, the issue arose as to how the defendants’

unconstitutional life-without-parole sentences for murder, and the legislature’s

 12
revision of the unconstitutional sentences to provide for parole eligibility, should

interact with the defendants’ consecutive sentences for armed criminal action. In

each case, the court held that the defendants were subject to the general rule that

their ultimate parole eligibility was determined by adding together the minimum

prison terms on each of the constituent, consecutive sentences forming the

defendants’ total sentencing sequence – including any minimum term applicable to

the defendants’ armed criminal action convictions.

 Dunn has not provided this Court with any of the Department’s court filings

in the Jones, Allen, or Lotts cases. From the courts’ opinions, however, it appears

that in each case the Department stated that the defendants would be eligible for

parole consideration following the service of the 25-year minimum term on their

murder sentences specified in the “Miller fix” statute (§ 558.047.1(1), RSMo 2016),

and an additional three years to reflect the statutory minimum term for armed

criminal action.

 Even if the Department stated in Jones, Allen, and Lotts that the offenders

would only be required to serve three years of their armed criminal action sentences

before becoming parole-eligible, this would not invoke judicial estoppel principles, or

establish an equal protection violation.

 [J]udicial estoppel “is a flexible, equitable doctrine intended to
 preserve the integrity of the courts.” “All factors that are relevant
 should be considered by the Court, but once a party takes truly
 inconsistent positions, there are no inflexible prerequisites or an
 exhaustive formula for determining the applicability of judicial
 estoppel.” Factors to consider include: (1) a party's later position is
 clearly inconsistent with its earlier position; (2) whether the party was
 successful in persuading a court to accept the party's earlier position

 13
 such that judicial acceptance of an inconsistent position in a later
 proceeding would create the perception that a court was misled; and
 (3) whether the party seeking to assert an inconsistent position would
 derive an unfair advantage or impose an unfair detriment on the
 opposing party if not estopped. These factors “are guideposts, not
 elements, intended to assist courts in identifying when judicial
 estoppel should be applied to preserved the integrity of the judicial
 process and prevent litigants from playing ‘fast and loose’ with the
 courts.”

Banks v. Kansas City Area Transp. Auth., 637 S.W.3d 431, 445 (Mo. App. W.D.

2021) (citing and quoting Vacca v. Mo. Dep’t of Labor and Indus. Relations, 575

S.W.3d 223, 232-33, 235, 236 (Mo. 2019)).

 In the Jones, Allen, and Lotts cases, the length of the defendants’ minimum

prison terms for their armed criminal action convictions was not at issue, or decided

by the courts. Instead, the only relevant point was that the defendants had other

sentences, with their own minimum prison terms, which were consecutive to their

murder sentences. The courts in those cases merely addressed how the consecutive

sentences would interact with the defendants’ murder sentences, without deciding

what the defendants’ parole eligibility dates actually were. Thus, in none of these

cases did the Department succeed in persuading a court that the defendants would

only be required to serve three years on their armed criminal action sentences

before being parole-eligible. Nor did the Department derive any particular

advantage by stating that the defendants’ minimum term on their armed criminal

action sentences was three years, as opposed to some longer period. Judicial

estoppel is inapplicable in these circumstances.

 Nor has Dunn established an equal protection violation.

 14
 The equal protection clause guarantees that similar individuals
 will be dealt with in a similar manner by the government. It does not
 reject the government's ability to classify persons or “draw lines” in the
 creation and application of laws, but it does guarantee that those
 classifications will not be based upon impermissible criteria or
 arbitrarily used to burden a group of individuals.

Tyler v. Mitchell, 853 S.W.2d 338, 341 (Mo. App. W.D. 1993) (citation omitted). “It

is well settled that the government's imposition of punishment of one person more

harshly than another does not, of itself, give rise to an equal protection violation.”

State Bd. of Reg’n for Healing Arts v. Brown, 121 S.W.3d 234, 236 (Mo. 2003).

Because Dunn does not contend that he and the offenders in Jones, Allen and Lotts

are being treated differently due to their membership in any protected class, to

establish an equal protection violation he must establish that “there is no rational

basis for the difference in treatment.” Jefferson City Apothecary, LLC v. Mo. Bd. of

Pharmacy, 499 S.W.3d 321, 331 (Mo. App. W.D. 2016) (citation omitted).

 Even if the Department of Corrections only required the offenders in Jones,

Allen, and Lotts to serve three years on their life sentences for armed criminal

action before becoming parole-eligible, there plainly would be a “rational basis” for

treating them differently from Dunn. In each of those cases, the defendants were

less than eighteen years old at the time of the relevant offenses. In Miller and

Montgomery, the Supreme Court of the United States emphasized that sentencing

considerations are different with respect to juvenile versus adult offenders, and held

that parole must be more freely available to youthful offenders as compared to older

offenders. See Miller, 567 U.S. at 471-74; Montgomery, 577 U.S. at 206-08. Indeed,

Miller categorically declared that “children are constitutionally different from

 15
adults for purposes of sentencing.” 567 U.S. at 471. What is said in Miller and

Montgomery about the material difference between the criminal sentencing of

youthful and adult offenders establishes a rational basis for treating youthful

offenders differently for purposes of parole eligibility on their armed criminal action

convictions – assuming the Department has actually done so. Dunn’s equal

protection argument has no merit.

 Dunn has advised the Court that the Department of Corrections has revised

its calculation of the parole eligibility dates for a large number of currently

incarcerated offenders serving consecutive sentences for armed criminal action,

after initially informing them that they would be required to serve only three years

before becoming parole-eligible on those sentences. We decide another such case

today. See Bolden v. State, No. WD84514; see also Mozee, 401 S.W.3d at 501-02. We

are aware of other cases in which the Department has significantly revised the

calculation of offenders’ parole eligibility dates, years after an initial determination.

See, e.g., Hill v. Cassady, 571 S.W.3d 154, 157-58 (Mo. App. W.D. 2019); Mann v.

McSwain, 526 S.W.3d 287, 288 (Mo. App. W.D. 2017). Dunn does not argue that he

is entitled to relief based solely on the fact that the Department has changed his

parole eligibility date. Nevertheless, crime victims, incarcerated individuals, their

families and friends, and others may attach considerable significance to the parole

eligibility dates the Department announces. While the Department’s erroneous

notification of an early parole eligibility date may not itself grant offenders

enforceable rights, we are troubled by the apparent frequency with which the

 16
Department is required to correct parole eligibility determinations which are

governed by long-standing statutory and regulatory provisions. The Department,

the inmate population, and the public would be better served if the Department

exercised greater care in its initial determination of offenders’ parole eligibility

dates.

 Conclusion

 The Board of Probation and Parole is entitled to require Dunn to serve a

minimum of fifteen years on his life sentence for armed criminal action before he is

eligible for parole, in addition to any minimum term he is required to serve on his

second-degree murder sentence. The circuit court’s judgment, which granted

judgment on the pleadings to the Department of Corrections, is affirmed.

 Alok Ahuja, Judge
All concur.

 17